# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **Case No. 8:11-cr-504-T-30AEP**

**BRYAN EUGENE PARKER**
_____/

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
## AND REQUEST FOR EVIDENTIARY HEARING

COMES NOW, the Defendant, BRYAN EUGENE PARKER, by and through undersigned counsel, and moves this Honorable Court, pursuant to the Fourth Amendment to the United States Constitution as well as Federal Rule of Criminal Procedure 12(b), to suppress any and all evidence, both physical and testimonial, seized as a result of his unlawful seizure and subsequent search on May 24, 2011. In support thereof, Mr. Parker would so state:

The charges against Mr. Parker arise out of a stop and search of his vehicle without probable cause or a search warrant and in violation of his Fifth and Sixth Amendment rights. Although it is anticipated that the government will assert that Mr. Parker was stopped that day based on probable cause that he had committed a traffic violation and the subsequent search based on probable cause created when a K-9

1

officer "alerted" to controlled substances inside, Mr. Parker asserts that at an evidentiary hearing on this matter it will be revealed that the true reason behind the stop was continued harassment by the Hillsborough County Sheriff's Office "green team." As such, he requests this Court hold a hearing on the matter and find that all physical and testimonial evidence be suppressed.

In the months leading up to Mr. Parker's arrest, officers from the Hillsborough County Sheriff's Office (HCSO) "green team" had responded to the residence where Mr. Parker was living with his mother, near Race Track Road, in Odessa, Florida. The officers alleged that they had received anonymous calls suggesting that drugs were being sold out of the residence. Each time, either Mr. Parker would be home and would consent to a search of the home, or the officer's would leave their card and upon his return, Mr. Parker would contact them and they would return to house and search. During none of these incidents were any illicit drugs or firearms located.

On May 27, 2011, at approximately four o'clock in the afternoon, as Mr. Parker was driving down Race Track Road, HCSO Deputy Joyce was contacted by Deputy Curran, who was working in an undercover capacity, and instructed to stop Mr. Parker's vehicle. Deputy Joyce was in a marked vehicle and initiated a stop. Once Mr. Parker stopped, Deputy Joyce approached the vehicle to obtain the driver's information and, according to his report, observed a violation of the sun-band on Mr.

2

Parker's front windshield.  According to a citation provided in discovery, the band was "below" the AS1 standard as set forth in Florida Statute 316.2952(2)(b). Although Mr. Parker's license and registration were valid and his only infraction a non-appearance one, at least six additional units responded to the "traffic stop" prior to Deputy Joyce completing the issuance of the citation.  The other units that arrived on scene, some within seconds, included members of the HCSO "green team" and undercover Deputy Curran.

Within minutes of the stop, a K-9 unit arrived and Mr. Parker was ordered out of the vehicle.  Deputy Grecco's report reflects that prior to walking K-9 Bullit around Mr. Parker's vehicle, he had become aware that Mr. Parker was on controlled release from prison for a narcotics violation and had a history of this type of illegal activity. As K-9 Bullit was led around the truck, Mr. Parker was placed in the rear of a police car.  According to the report, Bullit positively alerted to narcotics odor from the driver's door seam.  Officers then searched the vehicle and located a marijuana cigarette, an additional amount of marijuana in a plastic bag, numerous drug paraphernalia items and a revolver in the drivers door pocket.  An additional rifle was located in the bed of the truck.  Once these items were discovered, Deputy Curran approached Mr. Parker and questioned him.  Officers continued to search the vehicle for more narcotics and continued to badger Mr. Parker asserting that if he wanted to

avoid having his truck ripped apart he needed to tell them where the "dope" was.  No additional contraband was ever located.

Mr. Parker was arrested and originally charged by the State of Florida.  Four months after his state arrest, Mr. Parker was federally indicted on September 29, 2011.  He was arrested and appeared for his initial appearance on October 26, 2011.

Mr. Parker submits that law enforcement did not have grounds to stop his vehicle and, thus, the seizure of his person at that point was unconstitutional. Additionally he submits that the search of his vehicle was warrantless, without consent or probable cause and also unconstitutional. Thus, any and all evidence obtained as a result must be suppressed.

### Memorandum of Law

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures" by government officials, "and its protections extend to brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266,273, 122 S. Ct. 744, 750 (2002).  A warrantless search or seizure is presumptively invalid.  *Coolidge v. New Hamphsire*, 403 U.S. 443 (1971). An officer may conduct a brief investigatory stop of a vehicle only if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.  *United States v. Strickland,* 902 F.2d 937, 940 (11th Cir. 1990).

Mr. Parker was subject to an unreasonable seizure by law enforcement when he submitted to the officer's show of authority in initiating the traffic stop on his vehicle.

A stop of a vehicle is "reasonable" under the Fourth Amendment only if probable cause exists to believe that a traffic violation has occurred. *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999); *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990). The standard for determining whether probable cause exists is met "when the facts and circumstances within the officer's knowledge, of which he or she has reasonable trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Law enforcement's stop of Mr. Parker's vehicle was not based on probable cause that he committed a traffic infraction or reasonable trustworthy information that he did. Instead, law enforcement stopped Mr. Parker's vehicle based on a desire, unfounded, to catch him with illegal narcotics. Although the constitutional "reasonableness" of a traffic stop is determined irrespective of the "intent" of the officer, the question at issue is whether the suspect's behavior actually gave rise to probable cause sufficient to justify the seizure. *Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1252 (11th Cir. 1997) *citing Whren v. United States*, 517 U.S. 806, 811-18, 116 S.Ct. 1769, 1773-76 (1996). The detention of

persons during an automobile stop, "even if only for a brief period and for a limited purpose," constitutes a 'seizure' for purposes of the Fourth Amendment. *Whren v. United States*, 116 S. Ct 1769, 1772 (1996); *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). Automobile stops are thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. *Id*.

Law enforcement's seizure of Mr. Parker was not justified and the evidence produced at a hearing on this matter will show that.

An officer's actions during a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place, and the stop may not last any longer than necessary to process the traffic violation absent articulable suspicion of other illegal conduct. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). An officer's prolonging of a traffic stop beyond its initial purpose is only reasonable in the limited circumstances where there is "an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). More than innocuous characteristics such as nervousness is insufficient. *United States v. Perkins*, 348 F.3d 965, 971 (11th Cir. 2003). It is a "cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-

delineated exceptions.'" *Acevedo v. California*, 500 U.;S. 565, 580 (1991)(quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)).

The duration of a stop must be limited to the time necessary to effectuate the purpose of the stop. *United States v. Purcell*, 236 F.3d at 1277. When the totality of the circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, an arrest and probable cause is required. *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986). To determine whether or not a full-scale, de facto arrest unsupported by probable cause occurred, the Court must apply four factors: (1) the purposes served by the detention; (2) the diligence with which the investigation is pursued; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004). Based on the fact law enforcement stopped Mr. Parker, purportedly, based on a non-court appearing infraction, his detention until a canine officer arrived, along with the arrival of at least 5 other units, to include undercover officers, exceeded the scope of the alleged justification for the stop.

Although a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment, *Illinois v. Caballes*, 543 U.S. 405, 410, 125 S. Ct. 834 (2005), a violation does occur if the individual is unlawfully detained, either initially or due to an unreasonably prolonged detention. *Id*. Since Mr. Parker's original seizure was

unconstitutional, the fact that a dog may have alerted to his vehicle did not validate the subsequent non-consensual and warrant-less search thereof.

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidenced derived from the unlawful conduct, or the "fruits of the poisonous tree," cannot be used in a criminal trial against the victim of the unconstitutional search and seizure. *United States v. Terzado-Madruga*, 897 F2d. 1099, 1112 (11th Cir. 1990). *See also Weeks v. United States*, 232 U.S. 383, 391-393, 34 S. Ct. 341 (1914).

The initial stop and seizure of Mr. Parker's person and vehicle was not based on reasonable suspicion, probable cause or a warrant and, therefore, was unlawful and in violation of his Fourth Amendment rights. As such, the search which occurred thereafter was a product of the unlawful detention and not justified. Therefore, any and all evidence, to include statements, procured after the initial stop and seizure must be suppressed as fruit of the poisonous tree procured only after Mr. Parker's Constitutional rights were violated.

At first blush it may appear that the Supreme Court's decision in *Whren* gave gave a license for officers to indeed utilize wholly pretextual traffic stops to conduct criminal investigations in all circumstances, as long as the officers could articulate any reason to conduct a traffic stop. It did not. The Eleventh Circuit has repeatedly

8

expressed its displeasure for officers using pretrextual traffic stops in order to conduct criminal investigations. *See, e.g., United States v. Valdez,* 931 F.2d 1448, 1450 (11th Cir. 1991)(reversing district court's denial of motion to suppress, where law enforcement was conducting a criminal investigation at a residence, observed defendant's vehicle at that residence, and, rather than pulling the vehicle over to conduct an investigatory stop, followed the vehicle until the driver committed a traffic infraction).  In *Whren*, the Supreme Court held that an officer's subjective intent at the time a traffic stop is made is irrelevant; so long as the officer has probable cause to believe that the defendant has violated the traffic code, the traffic stop will be reasonable for Fourth Amendment purposes if it involves a "run-of-the-mine" circumstance.  517 U.S. at 813, 819, 116 S. Ct at 1774, 1777.  The determination of probable cause in "run-of-the-mine" cases, under *Whren*, therefore rests on objective factors.  *Id*.  Although the Supreme Court affirmed the denial of *Whren*'s motion to suppress, **this case** is far from the "run-of-the-mine" case to which the Supreme Court in *Whren* limited its holding.  *Id*.

WHEREFORE, the Defendant, BRYAN E. PARKER, respectfully requests this Court schedule an evidentiary hearing on his motion to suppress and thereafter order all evidence seized as a result of the unlawful seizure of his person and search of his vehicle be suppressed.  Since the only evidence in support of the charges against Mr.

Parker arose out of the unlawful and unconstitutional conduct of law enforcement, once this Court orders the evidence suppressed, the charges must be dismissed.

DATED this 27th day of December, 2011.

Respectfully submitted,

DONNA LEE ELM
FEDERAL PUBLIC DEFENDER

*/s/Dionja L. Dyer*

Dionja L. Dyer, Esquire
Florida Bar No.0164518
Assistant Federal Public Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: 813-228-2715
Fax:          813-228-2562
Email:    Dionja_Dyer @fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2011, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to Assistant United States Attorney Jennifer Peresie, 400 North Tampa Street, Suite 3200, Tampa, Florida, 33602.

*/s/Dionja L. Dyer*

Dionja L. Dyer, Esquire
Assistant Federal Public Defender

10