```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE MIDDLE DISTRICT OF FLORIDA
2                             TAMPA DIVISION

3

4

5

6    UNITED STATES OF AMERICA,

7              PLAINTIFF,

8    VS.                          CASE NO: 8:11-CR-504-T-30AEP
     BRYAN EUGENE PARKER,         TAMPA, FLORIDA
9                                 9:00 a.m.

10             DEFENDANT.
     _____/
11

12
                              TRANSCRIPT OF PROCEEDINGS
13            BENCH TRIAL BEFORE THE HONORABLE JAMES S. MOODY
                           UNITED STATES JUDGE
14

15   APPEARANCES:

16   FOR THE GOVERNMENT:        JENNIFER PERESIE, ESQ.
                                Assistant U.S. Attorney
17                              400 N. Tampa Street, Ste. 3200
                                Tampa, Florida 33602
18
     FOR THE DEFENDANT:         DIONJA DYER, ESQ.
19                              Assistant Federal Public Defender
                                400 N. Tampa Street, Ste. 2700
20                              Tampa, Florida 33602

21   COURT REPORTER:           JANIE GIBBS, RPR
                                P.O. Box 2424
22                              Bradenton, Florida 34264

23

24

25   Proceedings recorded and transcribed by computer-aided
     stenography.
```

1

<u>P R O C C E D I N G S</u>

2

3          THE COURT:  Good morning.  Ready to proceed?

4          MS. DYER:  Your Honor, as are you aware, Mr. Parker

5   filed a motion to suppress attacking the stop and the search

6   of his vehicle in this case.  Your Honor held an evidentiary

7   hearing and ruled against him.

8          We then had questions about his competency.  The

9   Court ordered an evaluation and the report was returned that

10  he is competent to proceed.  I then explained went out to the

11  jail to explain to him his options at this stage of the

12  process.  He can either plead guilty to the charges and waive

13  his rights to appeal the suppression issue or he can go to

14  jury trial, or he can do a bench trial which we're scheduled

15  for today.

16          THE COURT:  Or he could plead open, couldn't he?

17          MS. DYER:  Not and preserve his right.  Once he

18  pleads guilty, regardless of it's with a plea agreement or

19  open, he waives his right to appeal the suppression issue.

20          THE COURT:  All right.

21          MS. DYER:  Mr. Parker has been doing his own

22  research on the issue.  He believes that he is entitled to a

23  new suppression hearing.  He does not believe my advice that

24  the process requires him to be adjudicated guilty and

25  sentenced prior to appealing that issue.  He also believes,

1   based on what the Court said orally at the end of the motion

2   to suppress hearing, that were he to proceed to jury trial

3   the evidence, the guns that were found in his vehicle could

4   not be introduced as evidence because he still believes it

5   was an unlawful search.  So at this point he doesn't trust my

6   advice.  He is unwilling to make a decision as to what the

7   next step in the process is and I believe he wants to address

8   the Court on his not trusting my effectiveness.

9           THE COURT:  Mr. Parker, what would you like to say?

10          THE DEFENDANT:  Okay, we had discussed an issue

11  about a video and I was explaining to her that the video

12  would show that the police officer is -- when he said that he

13  didn't issue me a ticket, a citation, which he did, and I was

14  telling her about the video and she told me they was a video.

15  So then the next week she tells me it wasn't a video.  So

16  because of that I'm saying she's ineffective of counsel,

17  saying I don't feel she was handling my case fairly.  Because

18  I'm not trying -- you know, what they did to me was on the

19  road with everything that was illegal, but I'm getting

20  charged for, you know, 15 years for nothing.  They didn't

21  even have no business.  Those same people have been messing

22  with me for over a year.  The same green team.  They been

23  coming to my house, searching my house and my truck,

24  everything right there in the yard.  And then I got the old

25  raggily gun and little tiny Derringer that, you know, I

1  wasn't trying to go out and kill nobody or nothing.  The gun

2  -- one gun didn't even work.  And you know, I just feel she

3  ain't really representing me properly, because of -- about

4  the deal about the video.

5          THE COURT:  So the issue that has you concerned is

6  whether or not there's a video?

7          THE DEFENDANT:  Yes, she told me it were, and that

8  could've proved my point that the police did -- you know,

9  everything they did was illegal, but she had said there was

10  and then a week later she said there wasn't, and that kind

11  of --

12          THE COURT:  She's telling you now there is no

13  video, right?

14          THE WITNESS:  Sir?

15          THE COURT:  She's telling you there is no video?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  From the Government, is

18  there a video?

19          MS. PERESIE:  There is no video, Your Honor.

20          THE COURT:  Thank you.  So what she's telling you

21  is correct.

22          THE DEFENDANT:  Well, basically why she told me it

23  was first time.

24          THE COURT:  I don't know, but it doesn't sound like

25  she's done anything unethical.  She's a good lawyer and she's

1   given you no grounds to have her removed.

2              THE DEFENDANT:  And another thing, I was asking her

3   about -- I got -- like she say, I been doing my own criminal

4   law procedures, and it states here that I'm entitled to a new

5   motion to suppress on the grounds that, you know, my

6   constitutional rights was violated, the Fourth Amendment.

7              THE COURT:  Who said that?

8              THE DEFENDANT:  I've got case law, not case law,

9   but criminal procedures from the law library.  I been kind of

10  touching up on that.

11             THE COURT:  How about giving that to Frank.  And

12  frank give that up to me please.

13             Ms. Dyer, you don't have happen to have McCauley

14  versus State, 842 So. 2nd 897 with you, do you?

15             MS. DYER:  I do not, Your Honor.

16             THE COURT:  Give me just a minute.

17             (COURT STOOD IN RECESS.)

18             THE COURT:  All right, give one of these to each

19  counsel.  Ms. Dyer, please share your copy with Mr. Parker.

20             MS. DYER:  Yes, Your Honor.

21             Mr. Parker, the reason I had to go get a copy of

22  the case is the research you have handed me is somewhat

23  confusing.  I'm going to read it for the record.  It says --

24  the research you gave me is a short paragraph that says, "A

25  defendant is entitled to a new suppression hearing to prove

his or her interest in a search premises where the State

makes a tacit concession of standing to the trial court and

the trial court errs in denying the defendant's motion to

suppress."

Then there's a footnote seven, and footnote seven

sites as authority for that statement McCauley versus State

842 So.2nd 897, Florida 2nd DCA 2003.  So I have copied that

case so we can see why it makes that statement.

What happened in that case was the trial court

denied the motion to suppress.  The case was appealed.  The

appellate court reversed and sent it back to the trial court

with instructions to have a new suppression hearing.  And in

the new suppression hearing the Court was to entertain the

issue of standing as to whether or not the defendant lived on

the premises and had the right to even argue about a motion,

about a warrant or a consent to search.  If the defendant

didn't live in the house, he had no right to even raise the

argument about an illegal search.

So the reason the defendant in this case got a

second suppression hearing was it went up on appeal, the

appellate court reversed and sent it back to the trial court

to have a second suppression hearing.

So you don't get a second suppression hearing from

me.  Now, if you appeal and the appellate court reverses me

on my ruling on your first suppression hearing, they may just

1  reverse out right or they may reverse it and send it back to

2  me with instructions to have another suppression hearing.

3  But until they do that, you don't get a second suppression

4  hearing in front of me.

5          THE DEFENDANT:  So you figure you was fair about

6  your sentence that you made on that one?

7          THE COURT:  I'm not sure I heard you.  Your

8  question was am I sure I was correct or fair or --

9          THE DEFENDANT:  Yes, sir, on that one.  Because you

10  did say that I wasn't stopped for my intent, so what was the

11  reason why them searching, why they were searching?

12          THE COURT:  I couldn't understand your last

13  statement, but I'll try to answer your question.

14          No, I'm not sure that what they did was fair.  My

15  suspicion is that they stopped you under pretence for the

16  purpose of searching your vehicle, but that's appropriate

17  under the law, and I ruled based on the law.  I ruled that

18  what they did was legal and that the search was legal and

19  that the search was incident to a traffic stop.  It doesn't

20  matter whether I think it's fair or not.  The question I have

21  to answer is, was it legal, and I said it was legal.

22          Now, if you appeal and the appellate court reverses

23  me, then I'll deal with that.  I'll do whatever they tell me

24  to do.  So that's where we are.  So what would you like to

25  do, Mr. Parker?

```
 1                THE DEFENDANT:  I'm going to go ahead and do what
 2   she's going to do.  Go to trial.
 3                THE COURT:  You want to proceed with this bench
 4   trial?
 5                THE DEFENDANT:  Yes.
 6                THE COURT:  You previously signed a waiver of right
 7   to a jury trial.  I presume your lawyer explained that to
 8   you, correct?
 9                THE DEFENDANT:  Yes, she did.
10                THE COURT:  Do you understand that you do not have
11   to go through a bench trial in front of me?  You have the
12   right to a trial by jury if you wish.  Do you understand
13   that?
14                THE DEFENDANT:  Yes.
15                THE COURT:  And that by signing this document and
16   proceeding today, you're waiving that right to a jury trial?
17                THE DEFENDANT:  Yes.
18                THE COURT:  And you still wish to proceed in that
19   manner?
20                THE DEFENDANT:  Yes.
21                THE COURT:  And you still wish to waive your right
22   to a jury trial?
23                THE DEFENDANT:  Sir?
24                THE COURT:  And you still wish to waive your right
25   to a jury trial?
```

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  Then we will proceed.  And I see

3  that the parties have filed a stipulation of facts, which I

4  will receive into evidence as Joint Exhibit 1.

5           (Exhibit One received into evidence.)

6           Does either side wish to offer any testimony or any

7  other evidence?

8           MS. PERESIE:  No, Your Honor.

9           MS. DYER:  No, Your Honor.

10           THE COURT:  All right.  Do you wish to make

11  arguments for the Government?

12           MS. PERESIE:  Your Honor, to prove the defendant

13  possessed a firearm as a convicted felon, the Government has

14  to prove two facts beyond a reasonable doubt.  First, that

15  the defendant knowingly possessed a firearm and was affecting

16  interstate and foreign commerce.  And second, if before

17  possessing that firearm the defendant had been convicted of a

18  felony.  The stipulation established that on May 27, 2011

19  Hillsborough County Sheriff's Officers located two firearms,

20  Ruger .22 caliber rifle and North American Arms Corp.  .22

21  caliber revolver in the vehicle.  Post Miranda the defendant

22  admitted he knowingly possessed firearms.

23           Second, in the stipulation on page two is a list of

24  the defendant's prior felony offenses.  Before possessing a

25  firearm the defendant admits he had been convicted of a

1  felony.

2              THE COURT:  What says defense?

3              MS. DYER:  Nothing, Your Honor.

4              THE COURT:  All right.  Based on the facts that the

5  parties have stipulated into the record, I find Mr. Parker

6  guilty as charged.  Mr. Parker, I assume there will be an

7  appeal from here, and I wish you luck.

8              (Court recessed at 9:31 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           C E R T I F I C A T E

2

3          I, Janie Gibbs, RPR, certify that the foregoing is

4    a correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7                          S/Janie Gibbs
                           Janie Gibbs, R.P.R.
8                          Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25